1

2

3

4

5       **UNITED STATES DISTRICT COURT**

6       **EASTERN DISTRICT OF WASHINGTON**

7   KRISTEN STANTON-COLLEY,           | No. 1:15-CV-03026-MKD

8               Plaintiff,            | ORDER DENYING PLAINTIFF'S
                                      | MOTION FOR SUMMARY
9        vs.                         | JUDGMENT AND GRANTING
                                      | DEFENDANT'S MOTION FOR
10  CAROLYN W. COLVIN,                | SUMMARY JUDGMENT

11  Acting Commissioner of Social Security, | ECF Nos. 12, 14

12              Defendant.

13          BEFORE THE COURT are the parties' cross-motions for summary

14  judgment. ECF Nos. 12, 14. The parties consented to proceed before a magistrate

15  judge. ECF No. 18. The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed. For the reasons discussed below, the Court

17  denies Plaintiff's motion (ECF No. 12) and grants Defendant's motion (ECF No.

18  14).

19

20  ORDER ~ 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER ~ 2

1  court "may not reverse an ALJ's decision on account of an error that is harmless."

2  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

3  nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The

4  party appealing the ALJ's decision generally bears the burden of establishing that

5  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

6  ## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

7  A claimant must satisfy two conditions to be considered "disabled" within

8  the meaning of the Social Security Act.  First, the claimant must be "unable to

9  engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  *Id.*

16  § 1382c(a)(3)(B).

17  The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

20  ORDER ~ 3

work activity.  *Id*. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  *Id*.

§ 416.920(b).

       If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  *Id*. § 416.920(a)(4)(ii).  If the claimant suffers from "any

impairment or combination of impairments which significantly limits [his or her]

physical or mental ability to do basic work activities," the analysis proceeds to

step three.  *Id*. § 416.920(c).  If the claimant's impairment does not satisfy this

severity threshold, however, the Commissioner must find that the claimant is not

disabled.  *Id.*

       At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  *Id*. § 416.920(a)(4)(iii).  If

the impairment is as severe as, or more severe than, one of the enumerated

impairments, the Commissioner must find the claimant disabled and award

benefits.  *Id*. § 416.920(d).

       If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

ORDER ~ 4

the claimant's "residual functional capacity." Residual functional capacity

("RFC"), defined generally as the claimant's ability to perform physical and

mental work activities on a sustained basis despite his or her limitations, *id*. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work"). *Id*. § 416.920(a)(4)(iv). If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled. *Id*. § 416.920(f). If the claimant is incapable of performing such

work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

*Id*. § 416.920(a)(4)(v). In making this determination, the Commissioner must also

consider vocational factors such as the claimant's age, education and past work

experience. *Id*. If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. *Id*. § 416.920(g)(1). If

the claimant is not capable of adjusting to other work, analysis concludes with a

finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

ORDER ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on January 28, 2012, alleging onset beginning June 10, 2011. Tr. 229. The application was denied initially, Tr. 109-118, and upon reconsideration, Tr. 119-130. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on August 9, 2013. Tr. 29-108. On November 25, 2013, the ALJ rendered a decision denying Plaintiff's claim. Tr. 11-28.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ found Plaintiff suffers from the following severe impairments: strains, sprains and soft tissue injuries, diabetes mellitus, and peripheral neuropathy. Tr. 16. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 18. The ALJ

ORDER ~ 6

then concluded that the Plaintiff had the RFC to perform sedentary work, with additional limitations.  Tr. 18-21.  At step four, the ALJ found Plaintiff could perform her past relevant work prior to November 1, 2012.  TR. 22.  In the alternative, at step-five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as surveillance system monitor and election clerk.  Tr. 24.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.  Tr. 24.

On January 16, 2015, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ's step-four finding is supported by substantial evidence; and

ORDER ~ 7

4.  Whether the ALJ's step-five finding is supported by substantial

evidence?

## DISCUSSION

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and

convincing reasons for discrediting her symptom claims.  ECF No. 12 at 12-15.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom."  *Vasquez v.

Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

ORDER ~ 8

citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

Here, the ALJ discounted Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms because: (1) the medical evidence and observations of treatment providers did not support the severity of

ORDER ~ 9

her alleged functional limitations; (2) her daily activities are consistent with the demands of sedentary work; (3) her most recent job ended for reasons other than her alleged impairments; and (4) she made inconsistent statements regarding her limitations. Tr. 19-21. In her opening brief, Plaintiff objected to only the first two reasons the ALJ offered for discounting her testimony. This Court finds the ALJ provided several specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 19.

**1. Medical Evidence**

The ALJ found that the medical evidence in the record did not support Plaintiff's claims of functional limitations. "Contradiction with the medical record is a sufficient basis for rejecting claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ first noted that in April 2012, Plaintiff told Dr. Pellicer that her back pain started in 2004 and that the following exacerbated her back pain: lifting more than 10 pounds, sitting for more than 30 minutes, standing for more than 10 minutes, or walking for more than ten minutes. Tr. 430-31. However, the ALJ then detailed how two physicians

ORDER ~ 10

evaluated Plaintiff, and both concluded that Plaintiff had fewer functional

limitations than Plaintiff alleged.  Tr. 119-130.

The ALJ next found that the objective imaging and clinical findings did not

show evidence consistent with the presence of disabling impairments.  Tr. 20.

Subjective testimony cannot be rejected solely because it is not corroborated by

objective medical findings, but medical evidence is a relevant factor in

determining the severity of a claimant's impairments.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001).  The ALJ noted that although Plaintiff complained

of chronic and disabling back pain, lumbar back x-rays in May 2012 were normal

and thoracic spine x-rays in September 2012 were normal.  Tr. 434, 465.

Although Plaintiff complained of left arm and right shoulder pain, x-rays of her

arm in November 2012 were normal and right shoulder x-rays in March 2013 were

normal.  Tr. 489, 499.

The ALJ further concluded that the medical record showed that Plaintiff had

made inconsistent statements regarding the persistence and severity of her back

pain.  Tr. 20.  *Thomas*, 278 F.3d at 958 (ALJ may consider inconsistencies in a

claimant's testimony when assessing credibility).  Plaintiff contended that she is

unable to work due to her chronic, disabling back pain.  Tr. 19.  However, in

March 2012, Plaintiff reported no back pain, Tr. 421, which was a marked contrast

ORDER ~ 11

to her presentation to a different treatment provider, where she reported constant back pain at a level of six or seven out of ten, Tr. 426.  In other instances, Plaintiff reported to medical providers that she had no back pain.  *See, e.g*., Tr. 397, 416.

Plaintiff contends objective clinical evidence supports her disability claim, highlighting Dr. Pellicer's examination notes as objective clinical evidence. However, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## 2.    Daily Activities

The ALJ found that Plaintiff engaged in daily activities that were consistent with sedentary work and that her daily activities were inconsistent with her subjective complaints.  Tr. 20-21.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an

ORDER ~ 12

adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). First, the ALJ found that her daily activities included preparing meals, doing household chores, driving a car, shopping in stores for groceries, taking her kids to dancing and bowling, helping kids with homework and watching television, and concluded that these activities are consistent with sedentary work. Tr. 20-21. The ALJ recognized that Plaintiff reported she cannot vacuum or do yard work, which he concluded were activities not consistent with sedentary work. Tr. 20-21. Although Plaintiff alleged that her pain interfered with her ability to do these things, Plaintiff was able to perform all self-care activities and attend and watch her children's activities. Tr. 21. The ALJ found that these activities indicate her symptoms are not as limiting as she alleged. Tr. 21. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted). The ALJ properly discounted the credibility of Plaintiff's testimony.

ORDER ~ 13

### 3.     Plaintiff's Work History

The ALJ discounted Plaintiff's testimony about the severity of her limitations because those limitations did not stop her from working or from looking for work.  Plaintiff contested these issues for the first time in her Reply Brief.  ECF No. 15 at 5.  Since she did not raise these challenges in her opening brief, she waived this contention.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009).

Even considering Plaintiff's argument, the ALJ did not err.  She contends her discharge from her last employment, rather than her quitting because of a disability, is an insufficient reason to discredit her.  Here, Plaintiff was fired from her prior employment; she did not leave her employment because she was disabled.  Tr. 58.  At the time she applied for benefits, she stated she had stopped working "for other reasons" and described why she was fired.  Tr. 223.  In fact, five days after the alleged onset of disability, she reported an upcoming job interview.  Tr. 397.  The ALJ found her statement and actions discredit her claim that she became so disabled she could not work.  Because the ALJ reasonably interpreted the evidence to suggest that Plaintiff stopped working for reasons other than her impairments, that work history is a valid reason to discount Plaintiff's credibility.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding

ORDER ~ 14

that an ALJ properly discounted a claimant's credibility in light of, *inter alia*, evidence showing that claimant's job ended "because he was laid off, rather than because he was injured"). This was a specific, clear, and convincing reason to find Plaintiff not credible.

### 4. Inconsistency in Plaintiff's Statements

The ALJ discounted Plaintiff's claims about the severity of her limitations because of her inconsistent statements. Tr. 20-21. Plaintiff did not challenge this basis in her opening brief, thus, it is waived. *See Bray*, 554 F.3d at 1226 n.7.

Even considering Plaintiff's argument, the ALJ did not err. Plaintiff contends her application for unemployment benefits is not a clear and convincing reason for rejecting her subjective complaints about the severity of her disabilities. Receiving unemployment benefits may not disqualify her for DIB, but an ALJ may employ ordinary techniques of credibility evaluation, such as a claimant's inconsistent statements. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The representations Plaintiff made to obtain unemployment benefits contradicted her subjective complaints. To obtain unemployment benefits, she certified every week that she was ready, able, and willing to immediately accept any suitable work. *See* Title 50, Rev. Code Wash. Chs. 50.06, 50.20, 50.22; Title 192 Wash. Admin. Code. These certifications, at the very least, contradict her

ORDER ~ 15

testimony about the alleged onset of her disability.  These inconsistent statements

are an appropriate basis to discount Plaintiff's subjective complaints.  *See*

*Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming ALJ who

discounted claimant's testimony based, in part, on his receipt of unemployment

benefits).

    In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

## B. Medical Opinion Evidence

    Next, Plaintiff faults the ALJ for discounting the opinions of her treating

physician, Flint Orr, M.D., and examining physician, Mary Pellicer, M.D.  ECF

No. 12 at 8-11.

    There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's."  *Id*. at 1202.  "In addition, the regulations give more

ORDER ~ 16

1  weight to opinions that are explained than to those that are not, and to the opinions

2  of specialists concerning matters relating to their specialty over that of

3  nonspecialists." *Id.* (citations omitted).

4      If a treating or examining physician's opinion is uncontradicted, an ALJ

5  may reject it only by offering "clear and convincing reasons that are supported by

6  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

7  "However, the ALJ need not accept the opinion of any physician, including a

8  treating physician, if that opinion is brief, conclusory and inadequately supported

9  by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and

10 brackets omitted).  "If a treating or examining doctor's opinion is contradicted by

11 another doctor's opinion, an ALJ may only reject it by providing specific and

12 legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d

13 at 1216 (citing *Lester*, 81 F.3d at 830-31).

14      Contrary to Plaintiff's contention, the ALJ properly rejected the opinions of

15 Dr. Orr and Dr. Pellicer.  Because their opinions were contradicted,[1] the ALJ was

_____

17 [1] Plaintiff contends the ALJ could reject Dr. Orr's opinion on the ultimate issue of

18 disability only with clear and convincing reasons, citing *Holohan*, 246 F.3d at

19 1202-03 (9th Cir. 2001).  But the standard enunciated in *Holohan* is limited to

20 ORDER ~ 17

required to identify specific and legitimate reasons for rejecting their opinions. *Lester*, 81 F.3d at 830-31.

### 1. Dr. Orr

In December 2012, Dr. Orr completed a check-box questionnaire, indicating that Plaintiff can only occasionally use her hands for fingering, fine and gross manipulation, and handling, and that Plaintiff is not capable of any type of work on a reasonably continuous, sustained basis. Tr. 491. At the end of the questionnaire, Dr. Orr wrote the following: "The severity of hand pain and reported disuse and dropping items is why I consider her incapable. With treatment of diabetes, sleep apnea, [and] carpal tunnel syndrome[,] symptoms may improve significantly." Tr. at 492.

As an initial matter, contrary to Plaintiff's contention, the ALJ incorporated Dr. Orr's assessment of Plaintiff's fingering and handling limitations into the RFC; he limited Plaintiff to occasional fingering and handling after November 2012. Tr. 18. But the ALJ rejected Dr. Orr's opinion that Plaintiff was not capable of performing any work for several reasons.

uncontradicted opinions. *Id*. Here, Dr. Cortijo contradicted Dr. Orr's opinion when Dr. Cortijo concluded Plaintiff could work with some limitations. Tr. 124.

ORDER ~ 18

1    First, the ALJ faulted Dr. Orr's opinion because he did not cite objective

2   clinical findings to support his conclusions and utilized only a check-box form.

3   Tr. 22.  Opinions on a check-box form or report which do not contain significant

4   explanation of the basis for the conclusions may be accorded little or no weight.

5   *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  Moreover, an ALJ may

6   discredit treating physicians' opinions that are conclusory, brief, and unsupported

7   by the record as a whole or by objective medical findings.  *Batson v. Comm'r, Soc.*

8   *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* 20 C.F.R. §

9   404.1527(c)(3) (an ALJ may afford less weight to an opinion that is unsupported

10  by clinical findings).  Here, the Dr. Orr relied on a check-box form and provided

11  no objective clinical findings to support the opinion.

12    Second, the ALJ rejected Dr. Orr's opinion because it relied on Plaintiff's

13  subjective complaints and reports of decreased functions.  Tr. 22.  The doctor in

14  fact specifically noted his opinion was based on the Plaintiff's reporting of her

15  pain and her subjectively perceived limitations.  Tr. 492.  A physician's opinion

16  may be rejected if it is based on a claimant's subjective complaints which were

17  properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

18  *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.  As discussed above, the ALJ

19  properly discredited Plaintiff's symptom claims.

20  ORDER ~ 19

Third, the ALJ concluded that the objective treatment findings did not show that the Plaintiff's symptoms were as severe as Plaintiff claimed and did not establish the presence of debilitating symptoms.  An ALJ may reject a physician's opinion that is unsupported by the record as a whole, or by objective medical findings.  *Tonapetyan*, 242 F.3d at 1149; *see also* 20 C.F.R. § 404.1527(c)(4) (An ALJ may give less weight to a medical opinion that is inconsistent with the medical record as a whole).  As the ALJ noted, diagnostic tests of Plaintiff's left arm, right shoulder, and lumbar and thoracic spine were normal.  Tr. 16-17 (citing Tr. 434, 465, 489, 499).  The physical examinations revealed some limitations, which the ALJ accounted for in the RFC.  However, Plaintiff maintained a range of functional abilities, such as walking with a normal gait, standing without difficulty, exhibiting full strength in her legs, and having a full range of motion in her extremities.  Tr. 379-80, 382, 407, 471, 503.

During some of Plaintiff's medical visits, she told her provider that she suffered "constant" pain.  Tr. 426, 503.  During other visits, including visits a month later, she reported no pain.  Tr. 394, 397, 404, 417, 422.  When she reported pain, doctors and physician assistants examined her feet, her back, her shoulders, and her hands; they referred her for blood and urine tests, x-rays, and MRIs.  Tr. 380, 392, 408-14, 417, 425-28, 446-51, 460, 462-65, 487-88, 499, 503, 509-11.

ORDER ~ 20

Dr. Flint Orr assessed her joint pain multiple times, and generally found "no real evidence" of inflammation or joint swelling.  Tr. 460, 503.  Upon examining Plaintiff's foot, Dr. Orr concluded that she had no abnormalities to her feet, toe deformities, loss of sensation, foot ulcers, edema, decreased circulation, muscle weakness, or Charcot Foot, and concluded her foot was "normal."  Tr.  462.  Dr. Orr ordered an MRI and multiple x-rays on Plaintiff's shoulder, chest, and back. The radiologists who reviewed the MRI and x-rays found her "soft tissues were unremarkable."  Tr. 499.  The radiologists diagnosed no bone or joint abnormalities, evidence of acute bony injury, evidence of degenerative changes of the lumbar spine or mid- or lower-thoracic spine.  Tr. 417, 465, 488-89. Radiologists found Plaintiff's spine in normal alignment, with spaces between discs preserved, and bony bodies and processes intact.  Tr. 417, 434, 465, 488-89, 499.  The ALJ permissibly discredited Dr. Orr's opinion based on the treatment findings in the record.

Fourth, the ALJ found that Dr. Orr's opinion indicated that the limitations were temporary, not permanent.  Tr. 22.  On the form, Dr. Orr noted that he expected the symptoms to improve with treatment.  Tr. 492.  The ALJ found that statement consistent with Dr. Orr recommending Plaintiff for a six-month temporary (as opposed to permanent) disability parking pass (Tr. 498), indicating

ORDER ~ 21

he believed her impairments were not permanent.  To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). From Dr. Orr's statement indicating he expected her functioning to improve with treatment and decision to limit the parking permit to six months, the ALJ could reasonably infer that the duration requirement for a finding of disability is not met and reject Dr. Orr's proposed limitations.

The ALJ provided specific and legitimate reasons for rejecting Dr. Orr's opinion regarding Plaintiff's limitations.

### 2. Dr. Mary Pellicer, M.D.

In April 2012, Dr. Pellicer examined Plaintiff.  The ALJ gave significant weight to some of Dr. Pellicer's conclusions regarding limitations, but did not credit the opinion that Plaintiff would need "more frequent breaks" to perform sitting, standing, and walking functions in the workplace or that Plaintiff was completely unable to bend, squat, crawl, and kneel.  Tr. 21 (citing Tr. 431).

First, the ALJ discounted Dr. Mary Pellicer's opinion because she did not provide support for the conclusions and her exam findings do not show how more

ORDER ~ 22

1  frequent breaks would improve Plaintiff's functioning.  Tr. 21.  A medical opinion

2  may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is

3  inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  The

4  ALJ noted that Dr. Pellicer's exam findings did not suggest that Plaintiff would

5  need "more frequent breaks," other than the "chronic back pain."  Tr. 431.  As the

6  ALJ noted, this finding was based on Plaintiff's own self-report of pain, not based

7  on the examination that Dr. Pellicer performed.

8         Second, the ALJ discounted the opinions because they were based on

9  Plaintiff's subjective statements rather than objective examination findings.  A

10 physician's opinion may be rejected if it is based on a claimant's subjective

11 complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149;

12 *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.  Here, given Plaintiff's statements

13 to Dr. Pellicer recounting her back pain (Tr. 426), it was reasonable for the ALJ to

14 conclude that Dr. Pellicer's opinion regarding chronic back pain were based on

15 Plaintiff's subjective complaints.  As discussed above, the ALJ properly

16 discredited Plaintiff's symptom claims.

17        Finally, the ALJ discredited Dr. Pellicer's opinion because Plaintiff's

18 presentation during her examination with Dr. Pellicer was substantially different

19 than that of other treatment providers.  An ALJ may afford less weight to an

20 ORDER ~ 23

opinion that is inconsistent with the record as a whole.  20 C.F.R. §

404.1527(c)(4).  For instance, during Dr. Pellicer's exam, she observed that

Plaintiff walked with a limp, had difficulty getting on and off the table, and

appeared uncomfortable.  Tr. 428.  However, during other examinations, other

treatment providers observed that Plaintiff walked with a normal gait, stood

without difficulty, exhibited good weight bearing on both legs and a full range of

motion in her extremities, and was not in acute distress.  Tr. 379-80, 382, 407,

471, 503.

    While Dr. Pellicer noted Plaintiff's chronic back pain, treatment providers

diagnosed no abnormality in her back.  *Compare* Tr. 431 with Tr. 417, 434, 441,

465, 488-89, 499.  While Dr. Pellicer observed Plaintiff limp, Dr. Flint Orr

examined her foot and found no abnormalities, loss of sensation, or muscle

weakness.  Tr. 462.  While Dr. Pellicer observed Plaintiff experience difficulty

getting on and off the exam table, other treatment providers observed Plaintiff

walking with a normal gait, standing with no difficulty, and exhibiting good

weight bearing on both legs.  Tr. 379-80, 382, 407, 471, 503.  While Dr. Pellicer

concluded Plaintiff could not bend or squat, other providers observed Plaintiff

exhibit full range of motion in her arms and legs.  Tr. 379.  The inconsistencies in

the record as a whole constitute substantial evidence for discounting Dr. Pellicer's

ORDER ~ 24

opinion.  *See*, *e.g.*, *Valentine v. Cmm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93

(9th Cir. 2009) (affirming ALJ when presented with inconsistent medical record).

Even if the evidence was susceptible to more than one rational

interpretation, this Court must uphold the ALJ's conclusion.  *Morgan v. Comm'r,*

*Soc. Sec. Admin.*, 169 F.3d at 599.

**C. Step Four Analysis**

Plaintiff contends the ALJ's step-four analysis is inadequate because he

failed to take into account all of her limitations; to properly identify the specific

demands of her past work; and to compare these specific demands with her

specific functional limitations.

At step-four, a claimant has the burden of showing she can no longer

perform past relevant work (PRW).  20 C.F.R. §§ 404.1520(e), 416.920(e).

Although the burden of proof lies with the claimant, the ALJ has a duty to make

the requisite factual findings to support his conclusion.  SSR 82-62.  This requires

specific findings as to the claimant's RFC, the physical and mental demands of the

PRW, and the relation of the residual functional capacity to the past work.  SSR

82–62.

As discussed above, the ALJ properly discredited the opinions Plaintiff

alleges should have been included in the RFC.  Accordingly, the ALJ need not

ORDER ~ 25

incorporate those limitations in the RFC.  *See*, *e.g., Osenbrock v. Apfel*, 240 F.3d

1156, 1165 (9th Cir. 2001).

The ALJ failed to make any specific findings about the demands of her

PRW, including customer service representative, *see* Tr. 22-23, which is error.

However, the ALJ's error is harmless.  It is harmless error for an ALJ to err at step

four if substantial evidence supports the ALJ's alternative finding at step five.  *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

**D. Step Five Analysis**

Finally, Plaintiff faults the ALJ for posing an incomplete hypothetical to the

vocational expert.  ECF No. 12 at 17-18.  Specifically, Plaintiff contends that the

ALJ erred by failing to include in her hypothetical various limitations that the ALJ

rejected.

"An ALJ must propound a hypothetical to a [vocational expert] that is based

on medical assumptions supported by substantial evidence in the record that

reflects all the claimant's limitations."  *Osenbrock*, 240 F.3d at 1165.  "If the

assumptions in the hypothetical are not supported by the record, the opinion of the

vocational expert that claimant has a residual working capacity has no evidentiary

value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  "It is, however,

proper for an ALJ to limit a hypothetical to those impairments that are supported

ORDER ~ 26

by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165.  Here, this Court finds the ALJ's hypothetical included the full extent of Plaintiff's limitations supported by substantial evidence in the record.  Plaintiff cites to the opinions of Dr. Pellicer in support of her alleged limitation.  However, as indicated above, the ALJ properly considered and rejected those opinions when formulating Plaintiff's RFC.  Accordingly, the ALJ need not have included such a limitation in the RFC.  Because the ALJ included the full extent of credible limitations supported by the record in the hypothetical, this Court does not find error.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED.**

2.    Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **Judgment for Defendant**, provide copies to counsel, and **CLOSE** the file.

DATED this 29th day of March 2016.

*s/ Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER ~ 27